UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No:

Juan Carlos Obregon,
an individual

    Plaintiff,

v.

Windmills Capital, Inc. a Florida corporation,
Alejandro Riquezes, an individual,
Carlos Riquezes, an individual.

    Defendants,
_____/

### VERIFIED COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff, Juan Carlos Obregon ("Obregon") by and through his undersigned attorney, and sues Windmills Capital, Inc. a Florida corporation ("Windmills"), Alejandro Riquezes, an individual ("A. Riquezes") and Carlos Riquezes, an individual ("C. Riquezes") and in support alleges:

### NATURE OF THE ACTION

1. This is an action for violations of the antifraud provisions of the Federal Securities laws, Securities and Exchange Act of 1933 and 1934, breach of contract, common law misrepresentation, conversion or in the alternative fraud in the inducement and unjust enrichment against the named Defendants.

### PARTIES

2. Plaintiff, Obregon is a Venezuelan citizen residing and domiciled in Venezuela who engaged in business in Florida with Defendants.

1

3. Windmills is a Florida corporation registered as an investment advisor with the Securities and Exchange Commission ("SEC"), doing business in Boca Raton, Florida.

4. A. Riquezes is an individual residing in Florida offering investment advise, and doing business including foreign currency exchange services in Florida.

5. C. Riquezes is an individual residing in Florida offering investment advise, and doing business including foreign currency exchange services in Florida.

## JURISDICTIONAL ALLEGATIONS

6. This Court has jurisdiction of the violations of the Federal Securities laws, and Securities and Exchange Act of 1933 and 1934 under § 21(d)(3) and 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78u(d)(3) and 78aa. In connection with the conduct described herein, the defendant made use of the mails and/or the means or instrumentalities of interstate commerce.

7. This Court also has jurisdiction of the additional common law claims through diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332 in that Plaintiff and Defendants are citizens of different states. Specifically, Plaintiff Obregon is a resident of and is domiciled Caracas, Venezuela, and Defendants A. Riquezes and C. Riquezes are resident of Florida, and Windmills principal place of business is in Florida.

8. Subject matter jurisdiction of the common law claims is also proper because the matter in controversy for monetary damages exceeds seventy-five thousand ($75,000.00), exclusive of attorneys' fees and costs.

9. Venue is proper in this Court because this is the District in which a substantial part of the events and/or omissions giving rise to the Plaintiff's claims occurred.

10. Defendants directly and indirectly made use of the means and instrumentalities of interstate commerce in connection with the acts and practices complained herein.

11. All conditions precedents to the maintenance of this action by Plaintiff have occurred or have been waived performed or excused.

## BACKGROUND

12. Plaintiff re-alleges and reaffirms Paragraphs 1 through 11 as fully set forth herein.

13. Windmills principals, A. Riquezes and C. Riquezes, engineered a scheme and invited Obregon to invest large amounts of money with the company by inviting Obregon to play golf, visit Windmills' principals' homes with the purpose of gaining Obregon's trust.

14. Once Windmills' principals had gained Obregon's trust, A. Riquezes, a licensed investment advisor with the SEC, along with his brother C. Riquezes offered to Obregon to participate in currency exchange of Venezuelan Bolivars for United States Dollars ("U.S. Dollars") with the expectation for Obregon to make a profit out of this currency exchange.

15. On or about February 2012, A. Riquezes and C. Riquezes, acting as individuals and on behalf of Windmills solicited Obregon to invest in the exchange of Venezuelan Bolivars to U.S. Dollars with Windmills through the means of electronic media communications such as Blackberry Messenger.

16. At all time relevant to this Complaint, A. Riquezes and C. Riquezes, acting as individuals and on behalf of Windmills stated to Obregon that the exchange transaction would be conducted through Windmills and everyone involved in any of the transactions had been through a due diligence process by Windmills.

17. However, at the time that A. Riquezes and C. Riquezes, made these statements as individuals and on behalf of Windmills, they knew the statements were false as they now claim that the individuals involved in the transaction were independent in their actions and that Windmills was not involved in the trsanction.

18. Obregon agreed and entered into a verbal agreement with Defendants whereby Obregon would deposit 3,678,400.00 Venezuelan Bolivares, in Windmills designated bank accounts and Windmills would deposit Obregon the equivalent exchange in U.S. Dollars.

19. Obregon made the deposit of 3,678,400.00 Venezuelan Bolivares in Windmills designated bank account or about March, 2012.

20. Windmills collected a commission of $35,000.00 for the transaction.

21. Obregon was in continuous communication via Blackberry Messenger, email and phone with Defendants who has acknowledged the verbal contract, the receipt of the money and the debt to Obregon, however they refused to pay the agreed upon U.S. Dollar amount to Obregon.

22. It is Obregon's belief that Defendants simply decided to take the funds transferred by Obregon for his own use. Defendants designated a bank account in which Obregon deposited the funds, however, they now claim that they had no control over what had happened to the money transferred to their designated bank account.

23. Obregon has requested for Defendants to send the money as agreed in U.S. Dollars to Obregon, however, Defendants have refused to do so.

24. Obregon has retained the law offices of the undersigned attorney to represent them in this action and is obligated to pay a reasonable attorney's fee.

## COUNT I
## VIOLATION OF THE ANTIFRAUD PROVISIONS OF FEDERAL SECURITIES LAW

25. Obregon realleges and reaffirms Paragraphs 1 though 24 as fully set forth herein.

26. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. 78j(b).

27. Furthermore, SEC Rule 10b-5 implements Section 10(b) by declaring it unlawful, "in connection with the purchase or sale of any security," "(a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in

the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. 240.10b-5.

28. However, Defendants made representations to Obregon as stated in this Complaint, in order to manipulate, use as a deceptive devise, and defraud Obregon into depositing money into Windmills designated bank account to effectuate an investment through currency exchange in violation of 15 U.S.C. 78j(b) and 17 C.F.R. 240.10b-5.

29. Obregon suffered damages by losing all his money deposited in Windmill's designated bank account for this transaction.

WHEREFORE, Plaintiff demands judgment for rescission of the verbal agreement and damages against Defendants for restitution of the amounts deposited into Windmills designated bank account pursuant to the Securities Act of 1933, reasonable attorney's fees and other relief as this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT

30. Obregon realleges and reaffirms Paragraphs 1 though 24 as fully set forth herein.

31. Obregon and Windmills entered into a verbal agreement. Said agreement is evidenced by the deposits made into Windmills's designated bank account, and the Blackberry messenger conversations and email messages acknowledging the contract.

32. Windmills breached the agreement by failing to transfer the funds to Obregon in U.S. Dollars.

33. Obregon has been damaged in that he has been deprived of the money paid to Windmills, has lost money by the exchange rate having changed, and has lost the ability to utilize the money for other purposes.

**WHEREFORE**, Plaintiff requests damages against Windmills to be proven at the time of trial, prejudgment interest, and any and all other relief which this Court deems reasonable under the circumstances.

## COUNT III
## CONVERSION

34. Obregon realleges and reaffirms Paragraphs 1 though 24 as fully set forth herein.

35. Obregon transferred the monies to Windmills' designated bank accounts to be used solely for the purpose of Windmills effectuating a currency exchange from the Venezuelan Bolivars into U.S Dollars. This money was not intended authorized or agreed to be used for any other purpose.

36. Instead, Windmills took possession, ownership and control of the money exceeding five hundred and eighty three thousand eight hundred seventy three dollars and 1 cent ($583,873.01) for its own use or for the personal use of its principals.

37. The unauthorized, illegal, and deceitful use of the money by Windmills for its use, were and are inconsistent with Obregon's interest in said property.

**WHEREFORE**, Plaintiff requests damages against Windmills for the conversion of the money, and all other relief which this Court deems reasonable under the circumstances.

6

## COUNT IV
## FRAUDULENT INDUCEMENT AGAINST ALL DEFENDANTS

38. Obregon realleges and reaffirm Paragraphs 1 though 24 as fully set forth herein. Obregon files this count as an alternative to other counts in this Complaint.

39. A. Riquezes and C. Riquezes made statements as their individual capacity and on behalf of Windmills to Obregon in that Windmills would exchange Obregon's Venezuelan Bolivars to U.S. Dollars and Obregon would make a profit out of the transcation. These statements were material in Obregon entering into the verbal contract with Windmills and transferring the money to Windmills' designated bank accounts.

40. A. Riquezes and C. Riquezes knew that the statements he made were false at the time they made them as they intentionally misrepresented these facts in order to induce Obregon to deposit the money into Windmills' designated bank account.

41. A. Riquezes and C. Riquezes knew that the false statements he was making would induce Obregon to make a decision for him to enter into an agreement with him and for Obregon to transfer monies to Windmills' designated bank account.

42. Obregon relied on the statements made by A. Riquezes and C. Riquezes to enter into an agreement with Windmills and for Obregon to transfer monies to Windmills designated bank account.

43. Obregon has been damaged due to the reliance on A. Riquezes and C. Riquezes false statements.

WHEREFORE, Obregon requests damages against A. Riquezes and C. Riquezes and Windmills to be proven at the time of trial, prejudgment interest, attorneys fees, and any and all other relief which this Court deems reasonable under the circumstances.

## COUNT V
## UNJUST ENRICHEMENT

44. Obregon realleges and reaffirm Paragraphs 1 though 24 as fully set forth herein. Obregon files this count as an alternative to other counts in this Complaint.

45. Obregon conferred a benefit to Windmills by depositing approximately five hundred and eighty three thousand eight hundred seventy three dollars and 1 cent ($583,873.01) dollars in Venezuelan Bolivars to Windmills designated bank accounts.

46. Windmills acknowledged receipt of the money deposited into Windmills' designated bank account.

47. Windmills accepted and retained the money deposited into Windmills' designated bank account.

48. Since Obregon did not receive the benefit of obtaining the equivalent in U.S. Dollars for the money deposited into Windmills' designated bank account, it would be inequitable for Windmills to retain these monies for his own personal use without any benefit to Obregon.

WHEREFORE, Obregon requests damages against Windmills to be proven at the time of trial, prejudgment interest, and any and all other relief which this Court deems reasonable under the circumstances.

## COUNT VI – FRAUDULENT MISREPRESENTATION AGAINST ALL DEFENDANTS

49. Obregon realleges and reaffirm Paragraphs 1 though 24 as fully set forth herein. Obregon files this count as an alternative to other counts in this Complaint.

50. Windmills through its representatives A. Riquezes and C. Riquezes and A. Riquezes and C. Riquezes individually made representations of material fact regarding the investment offered to Obregon with regards to currency exchange of Venezuelan Bolivars to U.S. Dollars. These misrepresentations are detailed in this Complaint.

51. Windmills through its representatives A. Riquezes and C. Riquezes and A. Riquezes and C. Riquezes individually knew the falsity of these allegations.

52. Windmills through its representatives A. Riquezes and C. Riquezes and A. Riquezes and C. Riquezes individually intended that Windmills representations would induce Obregon to rely on them and to deposit the amounts agreed upon in Windmills designated bank account.

53. Obregon relied in the price representations made by Windmills through its representatives A. Riquezes and C. Riquezes and A. Riquezes and C. Riquezes individually and therefore made the deposit into Windmills designated bank account.

54. Obregon has been injured because of its reliance on the representation made and because it has been deprived of its funds.

**WHEREFORE** Plaintiffs demands judgment against Defendants for damages for, interest thereon, attorneys fees and costs and such other and further relief as this Court deems just and proper.

## COUNT VII – NEGLIGENT MISREPRESENTATION
## AGAINST ALL DEFENDANTS

55. Obregon realleges and reaffirm Paragraphs 1 though 24 as fully set forth herein. Obregon files this count as an alternative to other counts in this Complaint.

56. Windmills through its representatives A. Riquezes and C. Riquezes and A. Riquezes and C. Riquezes individually made representations of material fact with regards to currency exchange of Venezuelan Bolivars to U.S. Dollars. These misrepresentations are detailed in this Complaint.

57. Windmills through its representatives A. Riquezes and C. Riquezes and A. Riquezes and C. Riquezes individually should have known the falsity of the allegations and therefore was negligent in making such price representations.

58. Windmills through its representatives A. Riquezes and C. Riquezes and A. Riquezes and C. Riquezes individually expected that the representation would induce Windmills to rely on them and make the deposit into Windmills bank account.

59. Obregon justifiably relied on the representations made by Windmills through its representatives A. Riquezes and C. Riquezes and A. Riquezes and C. Riquezes individually and as a result, made the deposits into Windmills designated bank account.

60. Obregon has been injured because it has been deprived of the monies deposited into Windmills designated bank account.

**WHEREFORE** Plaintiffs demands judgment against Defendants for damages, interest thereon, attorneys fees and costs and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through his undersigned counsel, hereby demand a jury trial of all issues triable.

10

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements contained on this Complaint against Windmills Capital, Inc, Alejandro Riquezes and Carlos Riquezes are true and correct.

By: _____
Juan Carlos Obregon

Dated July **8TH**, 2013

Respectfully submitted,

By: /s/ Julisse Jimenez
*Attorney for Plaintiffs*
Florida Bar No. 0065387
Email: jj@gvazquez.com
By: /s/ Gerardo A. Vazquez
*Attorney for Plaintiffs*
Florida Bar No. 6904
Email: gv@gvazquez.com
Vazquez & Associates
601 Brickell Key Dr. Suite 702
Miami FL 33131
Telephone: 305-371-8064
Facsimile: 305-371-4967

11